## Crilly *v.* Hemm, Appellant.

*Contempt of court—Costs—Attachment—Receiver—Notice—Street railways.*

Where the receiver of a street railway company files a petition for an attachment for contempt against the burgess of a borough for an alleged obstruction of the tracks of the railway, the court cannot, after refusing to issue the attachment, impose any portion of the costs upon the respondent, where it appears that there was no evidence that the respondent had either knowledge or notice of the appointment of the receiver, and the court has affirmatively found that no contempt was committed.

Argued Dec. 7, 1904.   Appeal, No. 119, Oct. T., 1904, by defendant, from decree of C. P. Lehigh Co. April T., 1903, No. 3, dismissing petition for attachment for contempt in case of Lehigh Portland Cement Company et al v. Mauch Chunk, Leighton and Slatington Street Railway Company, Hugh E. Crilly, Receiver.   Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Petition for attachment for contempt of court.   Before TREXLER, P. J.

The facts appear by the opinion of the Superior Court.

*Error assigned* among others was the decree of the court.

*Laird H. Barber*, for appellant.—As it is not alleged that the respondents were officers of the court, jurors or witnesses, or guilty of misbehavior in the presence of the court, they could only be cited to appear, under the limitation of the act, for disobedience by parties to the lawful process of the court.

To render a party guilty of disobedience, some order should first have been issued and the respondent notified : Leslie v. Mahoning Railway Co., 22 Pa. C. C. Rep. 300; McKinney's Est., 2 W. N. C., 156; Killiams's Est., 2 W. N. C. 684; York Mfg. Co. v. Oberdick, 11 Pa. Dist. Rep. 616; Pierce v. Post, 6 Phila. 494; In re Garis, 185 Pa. 497.

Costs are exclusively a matter of statutory creation. The common law did not allow any costs, eo nomini, though in reality costs were always considered and included in the quantum of damages. Therefore, where no damages were thus recoverable, no costs are now allowed unless they have been expressly given by some subsequent statute : Wadlinger on Costs, pp. 49 and 50; Butcher v. Coats, 1 Dallas, 340.

When contempt of court is committed in a pending cause, the proceeding to punish is a proceeding by itself. It is not entitled in the cause pending, but on the criminal side : Passmore Williamson's Case, 26 Pa. 9; Magennis v. Parkhurst, 4 N. J. Eq. 433.

*Reuben J. Butz*, with him *James M. Breslin*, for appellee.— The rule to show cause was a proceeding in equity : Tome's App., 50 Pa. 285; Com. ex rel. v. Perkins, 124 Pa. 36; Ex rel Scott v. The Jailer, 1 Grant, 237.

Costs in equity are largely in the discretion of the court below and will not be interfered with except for strong reasons : Piper v. St. Paul Trust Co., 140 Pa. 233 ; Wadlinger on Costs, sec. 166; Pile v. Pedrick, 167 Pa. 296.

The conduct of the plaintiff will be considered in dividing the question of costs : McElwee v. Rourke, 43 Legal Int. 280; Kalle v. Heft, 154 Pa. 470 ; Russ v. Telephone Co., 3 Pa. Dist. Rep. 654; Alexander's Appeal, 20 W. N. C. 283.

To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have actual notice: York Mfg. Co. v. Oberdick, 11 Pa. Dist. Rep. 616; In re Lennon, 166 U. S. 548 (17 Sup. Ct. Repr. 658); Ulman v. Ritter, 72 Fed. Repr. 1000; Cape May & R. R. Co. v. Johnson, 35 N. J. Eq. 422; Shiffer v. Bridge Co., 2 Lack. Jurist. 288.

An injunction becomes operative from the time of its order, and is effectual from that date on all parties who have had actual notice (written or verbal) of the existence of the order: Streater's Est., 2 Kulp, 288; High on Injunctions, secs. 852, 853.

In equity the question whether personal service of an order is necessary to found an attachment is within the discretion of the court: Robb v. Pepper, 11 W. N. C. 497.

OPINION BY BEAVER, J., April 17, 1905:

It would seem as if in the orderly course of the administration of justice a court which has the authority to make a decree should have the power to enforce it. This is true in theory, but it has many limitations in practice. The abolition of imprisonment for debt limits the power of the courts to enforce a judgment for the payment of money, arising from a contract, to the financial ability of the party against whom the judgment is entered.

Such a limitation by the legislature, under the constitution, has been generally recognized. Hence, in the Act relating to the jurisdictions and powers of courts, passed June 16, 1836, P. L. 784, the 23d section provides: "The power of the several courts of this commonwealth to issue attachments, and to inflict summary punishments for contempts of court shall be restricted to the following cases, to wit: I. To the official misconduct of the officers of such courts respectively: II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court: III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." This power does not seem to have been enlarged by any subsequent legislation.

The power of the court, therefore, in that behalf is limited in Pennsylvania, as therein provided.

Contempt may be either direct, as in the presence of the court, or constructive, which is defined to be "An act done, not in the presence of the court but at a distance, which tends to belittle, to degrade or to obstruct, interrupt, prevent or embarrass the administration of justice."

"At common law the exercise by a court of competent jurisdiction of the power to punish for contempt cannot be reviewed. Every court is the exclusive judge of a contempt committed in its presence or against its process. The common law has been changed, however, in some jurisdictions by constitutional or statutory provisions, authorizing a review:" 9 Cyc. 61. It has been held in Hummell's Case, 9 Watts, 416; in Com. v. Newton, 1 Grant, 453, and other cases, that the exercise of the power of the court of common pleas to punish for contempt is subject to revision by the appellate courts.

In a proceeding in equity in the court of common pleas of Lehigh county, in which the Lehigh Portland Cement Co. et al. were plaintiffs and the Mauch Chunk, Lehighton & Slatington Street Railway Co. was defendant, the petitioner, Hugh E. Crilly, was appointed receiver of the defendant company. The tracks of the defendant company were laid through the borough of Mauch Chunk in Carbon county and the road was operated, after his appointment, by the receiver. The appellant was the chief burgess of the borough of Mauch Chunk.

In January, 1904, after an unusual snowfall, the receiver, through employees and appliances such as are usual, removed the snow from the track of the street railway, piling it upon the cartway of the street outside the limits of the track. The citizens of the borough, in cleaning their sidewalks, had done the same thing, thus making a ridge of considerable height between the track of the street railway and the sidewalks, preventing the use of the cartway for ordinary purposes. The appellant, the chief executive officer of the borough, and others apparently directed by him, with sleds having boards attached to the rungs between the runners, attempted to level this bank of snow, in order to make it possible for the cartway of the street to be used for the ordinary purposes of traffic and travel. This was done, as was alleged in the petition of the receiver,

several times, constituting an interference with his use and occupancy of the road as receiver, and asserting finally:

" Seventh. Your petitioner has thus far, since said snowfall, been unable to operate said railway in said borough, by reason of the conduct of said above mentioned persons herein complained of; that he cannot operate said road with safety to the public, unless he clears the tracks thereof from snow which may from time to time fall thereon." And thereupon praying " the court to grant a rule upon the said G. A. Hemm et. al., above named, to show cause why they should not be attached for contempt for their conduct herein complained of, in interfering with your receiver's possession of said railway in his management thereof." Upon the presentation of the petition, a rule was granted to show cause, which was duly answered by the appellant.

The material points of the appellant's answer were: " That the employees of said railway so removed the snow from that portion of the streets occupied by the tracks of the railway, in such a manner, as to greatly obstruct the same, and unreasonably incommode the traveling public, and thereby rendered travel upon said streets dangerous and in many places impossible." He denied " having willfully and maliciously thrown and pushed upon the tracks of said railway the snow which the employees thereof had removed therefrom or having in any way willfully interfered with the operation of said railway." And further denied " that said railway has not been operated, by reason of any acts committed by him ; but, on the contrary, says from the day following the fall of snow said railway has been operated continuously over the streets of said borough where said acts are said to have been committed."

No testimony seems to have been taken or, if any was heard by the court, it has not been printed in the record as presented to us.

After hearing, the court, upon an elaborate finding of facts and conclusions of law, sums up, in its opinion, as follows: " The court being of the opinion that no contempt was committed, it will be unnecessary to go into discussion of the powers of the court and the relation between municipalities and corporations in the hands of receivers. I have already indicated that, in my opinion, the case would be one that the court had

jurisdiction over and that, if anyone knowing of the appointment of the receiver willfully interferes with the operation of the road, even if under a claim of right, is liable to attachment," following which this decree was entered:

"Now, February 24, 1904, this case came on to be heard at this term and was argued by counsel and, upon consideration thereof, it is ordered, adjudged and decreed as follows: that the petition for an attachment against G. A. Hemm, John Otto, William Sherry and John Shullenberg is dismissed. As against Asa P. Blakslee, Charles Beltzner and Fred Haas (the petition heretofore having been dismissed upon motion in court), said order is now confirmed as (to) them and formally entered as of this date. The costs of this proceeding are to be divided between the plaintiff, Hugh E. Crilly, receiver, and G. A. Hemm, one of the defendants, who are hereby ordered to pay each one-half of said costs. This decree is entered nisi."

Subsequently, upon exceptions, this final decree was entered:

"And now, May 16, 1904, this cause came on to be further heard in the matter of the rule against G. A. Hemm et al. to show cause why they should not be attached for contempt and was argued by counsel and, upon due consideration, it is ordered, adjudged and decreed, in accordance with the opinion heretofore filed, that Hugh E. Crilly, receiver of the defendant corporation, pay the costs of serving the bill and rule upon all the respondents, except G. A. Hemm; that he pay the sheriff's return of service upon all the respondents; that he pay six-sevenths of the prothonotary's costs incurred in such proceeding for attachment, and that G. A. Hemm and Hugh E. Crilly, receiver as aforesaid, pay the remaining one-seventh of the costs of the prothonotary, the costs incurred in the service of the bill and rule upon G. A. Hemm, the fees and mileage of the witnesses heard in said proceedings and the costs of serving the subpoena upon them, in equal shares."

A number of the assignments of error are based upon abstract and academic questions which do not legitimately enter into the discussion of the general question involved.

The only practical question raised by any of the assignments of error is the one contained in the decree of May 16, above recited, in which a portion of the costs relating to the proceed-

ings in contempt is imposed upon the appellant. This, however, raises incidentally the collateral question of the jurisdiction of the court over the person of the appellant, and the power to impose costs upon him.

It does not appear anywhere in the receiver's petition or in any of the proceedings that the appellant had notice of the receiver's appointment, nor does it appear that any effort was made by the receiver to bring home to him notice either of his appointment or of his desire to have him desist from the prosecution of his efforts to make the streets of Mauch Chunk passable for the ordinary uses and purposes of those streets outside the operation of the street railway.

If the appellant was in any way subject to the jurisdiction of the court, it must have been for a constructive contempt under the second paragraph of the 23d section of the act of June 16, 1836, above quoted, applying to "disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;" but how can a person be guilty of disobedience or neglect of the process of the court to which he has never been made a party by either actual or constructive notice? There is no allegation in the petition that the appellant had actual notice of the receiver's appointment. We find no evidence that he had even constructive notice by the publication of the decree under which the receiver was appointed. Admitting, for the sake of the argument, that the common pleas of Lehigh county could acquire jurisdiction over the person of the appellant, who was a citizen of Carbon county, can this be done without notice of any kind to him of the decree of that court, for disobedience of which he is to be held guilty of contempt?

The court reaches this conclusion of law for which we find no basis of fact, namely : " 5. That actual notice of the appointment is sufficient to render any interference with a receiver's possession a contempt; and formal notice is not necessary. If the record shows any notice to the appellant of the appointment of a receiver, such notice might make him amenable to the process of the court, but we fail to find anywhere in the proceedings, in the petition or elsewhere, any allegation of such notice, and this we think was necessary, in order to establish the jurisdiction of the court. It is true that, in the opinion of

the court, it is said : " At this time the burgess had knowledge of the appointment of a receiver and the fact that the company was in the hands of a receiver who was an officer of the court." How such knowledge was acquired, however, nowhere appears, so far as we can ascertain. On the other hand, the request of petitioner to the court to find, as a matter of fact, " That G. A. Hemm was burgess of the borough of Mauch Chunk on January 27, 1904, and that all the defendants knew that the Mauch Chunk, Lehighton & Slatington Street Railway Co. was in the hands of a receiver; and that said G. A. Hemm knew that said receiver had been appointed by the court of common pleas of Lehigh county; that no order of the court appointing the receiver was served upon any of the defendants," was denied as a whole.

Assuming, however, that the court had jurisdiction of the appellant, as was doubtless the case, if there was evidence of his knowledge of the appointment of a receiver, he was absolved from the charge of contempt, first, by the refusal of the court of the petitioner's eighth conclusion of law, " That, under the law and facts in this case, the defendants are guilty of contempt of court and should be attached accordingly," and by the decree of February 24, 1904, dismissing the petition for attachment. The court, in our opinion, therefore, was not justified, in the exercise of a sound and wise discretion, in arbitrarily imposing any of the costs upon the appellant. This was a proceeding in equity and, although the law in certain criminal cases has conferred upon the jury the right arbitrarily to impose costs upon a defendant who is found by their verdict not guilty, there is no analogy between that case and the one under discussion.

So much of the decree of May 16, 1904, therefore, as imposes any of the costs of that proceeding upon G. A. Hemm is reversed and set aside, and it is ordered and decreed that all the costs of said proceeding, as well as the costs of this appeal, be paid by the petitioner, Hugh E. Crilly, receiver, etc.